392 A.2d 848

**COMMONWEALTH of Pennsylvania**

v.

**Dudley B. TURNER, Jr.**

**Appeal of Edna G. TURNER.**

Superior Court of Pennsylvania.

Submitted June 13, 1977.

Decided Oct. 20, 1978.

Michael J. Casale, Williamsport, for appellant.

Martin M. Fine, Williamsport, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Edna G. Turner had a complaint dated October 20, 1975,[1] filed against her husband, Dr. Dudley B. Turner, Jr., alleging his willful desertion and neglect to support her. On January 8, 1976,[2] following a hearing on the matter, the complaint was dismissed. A petition for rehearing was filed on April 22, 1976, and as a result of the rehearing, held on June 9, 1976, the lower court affirmed its earlier order

---

1. We are at a loss in explaining the docket entry showing the complaint to have been filed January 9, 1976. Obviously the docket is in error since the first hearing was December 23, 1975.

2. January 8, 1976 is the date shown on the order, although the docket entry is January 9, 1976.

dismissing appellant's complaint.[3]   For the reasons stated herein, we reverse the order of the lower court and remand the case for compliance with this opinion.

The parties were married on July 29, 1961, and lived together in their home in Williamsport until appellee's departure on about October 20, 1975.   Appellee provided no support for his wife after that time.   After appellee had the utilities of their home terminated, appellant went to live with her daughter's family and finally moved to her own apartment.   At the first hearing on December 23, 1975, both parties offered testimony regarding their financial status. Apparently the only substantial asset of the marriage other than the parties' home, valued at $45,000, was a coin collection which appellee testified had a $40,000 value.[4]   Appellee contended that his wife had removed the coin collection and approximately $4,000 in cash from a safe in their home.   The court scheduled a subsequent hearing for January 5, 1976, to determine whether appellant had possession of the coins and, if so, whether that would preclude her entitlement to support.   Appellant insisted throughout both proceedings that she did not have the safe's contents.   On January 8, 1976, however, the court dismissed appellant's complaint because it found as follows:

> "[T]he Court finds, by the preponderance of the evidence, that the prosecutrix has possession of or control over the sum of approximately $4,200.00 in cash taken from the family safe (apparently tenancy by entireties property) and a coin collection worth in excess of $25,000.00 (either jointly owned or the sole property of respondent).   She has refused to acknowledge possession of or control over either item of property, and now seeks a support order in the amount of $200.00 per week."

The court noted that "[o]rdinarily the evidence  .  .  . would warrant entry of a support order in the amount of

3.   The order appealed from, although dated June 9, 1976, was not entered until August 2, 1976.

4.   At the second hearing appellee testified the collection's value was closer to $30,000.

$75.00 per week. However, prosecutrix's possession or control of the cash and coin collection gives her control of ample assets from which to support herself."

Sometime after the first hearing, appellant became totally dependent on government support, which prompted the filing of the petition for a rehearing. Appellant remained unable to work because of poor health, and she had no outside source of income. She resided in federally subsidized housing, received $75 in assistance every two weeks and received $50 worth of food stamps at a cost of $10. She paid $26 per month for medical prescriptions.

Dr. Turner, who worked less than full time due to his health, testified that his income of less than $7,000 for the first five months of the year was exceeded by his expenses. He testified on cross-examination, however, that sometime after the first hearing he enjoyed a trip to Hawaii which cost $751. He also testified that he had filed a divorce action since the original hearing.

As a result of the rehearing, the lower court affirmed its original order, saying:

"[O]rdinarily an Order in the amount of seventy-five dollars per week would be warranted, and . . . while the wife may not have possession of the coins having substantial value, I still feel by the weight of the evidence, that she has control over them, and knows their whereabouts, and that living in her present condition is out of choice on her part, . . . [I]t seems to me that before the authority of this Court should be invoked to force support, the person seeking to invoke the power of the Court, owes an obligation to be more forthright than she is being. For her to come in and ask for the Order, when she is in control of and in effect has a key to release her own situation, I think is an inappropriate request . . . ."

Appellant argues on appeal that the lower court erred in denying her support, of which she had need and to which she was entitled, because it found that she had not been "forthright" on the issue of the coin collection.

An appellate court's review of a support order is limited to a determination of whether there is sufficient evidence to support the order. A support order will then be reversed only if there is an abuse of discretion. *Weiser v. Weiser,* 238 Pa.Super. 488, 362 A.2d 287 (1976); *Commonwealth ex rel. Goichman v. Goichman,* 226 Pa.Super. 311, 316 A.2d 653 (1973). A husband has a legally recognized duty to contribute to his wife's support until he can prove, by clear and convincing evidence, that the wife's conduct relieves him from that responsibility. *Commonwealth ex rel. Roviello v. Roviello,* 229 Pa.Super. 428, 323 A.2d 766 (1974). It is well established that a wife does not forfeit her right to support where her conduct would not constitute a valid ground for divorce. *Commonwealth ex rel. Eifert v. Eifert,* 226 Pa.Super. 98, 311 A.2d 718 (1973). In *Commonwealth ex rel. Roviello v. Roviello, supra,* this court declared: "[A] support action may not serve as an action to divide or distribute the husband's estate. This court has often noted that a proceeding for support cannot be used for the purpose of securing a wife's share of her husband's estate or for the purpose of recovering property to which she might otherwise be entitled. Thus, a court is without jurisdiction in a support action to direct an accounting of funds in which the wife has an interest [citations omitted]." *Id.* 229 Pa.Super. at 436, 323 A.2d at 771.

In the instant case, the lower court found that the wife would be entitled to receive support from her husband, but for the fact that she had access to the coin collection. The lower court thereby violated two of the maxims that we have just reaffirmed. First, the court determined in effect that appellant forfeited her right to support by conduct not sufficient to constitute a valid ground for divorce. Second, the court in effect ordered appellant to dispose of the collection, property of undetermined ownership, in order to maintain herself. Although the court was quick to declare that it was not deciding property rights, which it could not do, the court recognized that the collection was not appellant's personal asset. By not only permitting but compelling

appellant to dispose of the collection in order to acquire finances from other than government sources, the court utilized the support proceeding "for the purpose of securing [the] wife's share of her husband's estate or . . . recovering property to which she might otherwise be entitled." *Roviello, supra,* 229 Pa.Super. at 436, 323 A.2d at 771. This a court may not do. Viewing the order from a second perspective, the court was punishing appellant by denying her support until she is ready to acknowledge possession of the collection and to relinquish it. Examined in either light, the court went beyond its jurisdiction when it engaged in an attempt to allocate contested property between the parties.

There are two additional decisions of this court which shed light on the issue before us. In *Commonwealth ex rel. Gutzeit v. Gutzeit,* 200 Pa.Super. 401, 189 A.2d 324 (1963), this court declared:

"The evidence shows that the wife took assets from a joint safe deposit box within a few years of the separation of the amount of $4,000, according to her testimony and in excess of $12,000, according to the defendant's testimony. These facts must be considered in setting the amount of the order. 200 Pa.Super. at 413, 189 A.2d at 330.

In *Gutzeit,* the wife thus admitted having taken a quantity of jointly held assets, and the only controversy was their value. The court could then properly conclude that the wife held assets worth at least $4,000, and could legitimately consider that fact in setting the amount of support.

In *Commonwealth ex rel. Iezzi v. Iezzi,* 200 Pa.Super. 584, 190 A.2d 334 (1963), it is stated:

"Appellant testified that, at about the time he 'stopped giving her any cash', the wife converted certain jointly held bonds and transferred a jointly held bank account to her individual name. He argues that 'the court below further abused its discretion in refusing to give any consideration whatsoever to this fact'. The wife's position is that these assets belonged to her, and that she was forced to use a portion of her separate funds to supplement the food and clothing which appellant supplied. We agree

with the court below that this controversy should not be determined in the instant proceeding." 200 Pa.Super. at 590, 190 A.2d at 337.

*Iezzi* differs from *Gutzeit* in that ownership was contested in *Iezzi* but was not in *Gutzeit*. In both cases, however, the wife admitted having possession of the assets in question. The instant case differs from both *Iezzi* and *Gutzeit* in that appellant has continuously denied possession of the funds and coins. Further, ownership of the coins and of funds derived through a sale of a portion of the collection is undetermined. Therefore, the situation more closely resembles that in *Iezzi,* in which the court declared that, "this controversy should not be determined in the instant proceeding." Should the husband desire a judicial determination of the parties' rights in the assets formerly contained in the safe and now allegedly possessed by the wife, a separate action should be pursued.

An order of support seeks to secure a reasonable allowance for the maintenance of a wife so that she may not become a charge of the state. *Hellman v. Hellman,* 246 Pa.Super. 536, 371 A.2d 964 (1977); *Commonwealth ex rel. Bassion v. Bassion,* 199 Pa.Super. 541, 185 A.2d 822 (1974). As of the date of the second hearing in the instant case, appellant had become totally dependent on state support. The court's order amply demonstrates that the court penalized appellant for her alleged conversion of property. Ordinarily we would remand the case for the entry of an appropriate support order, but we perceive no need for this in the present case. The record quite amply supports and the lower court quite clearly determined, that but for the disputed matters we have discussed, the evidence warrants a support award of $75 per week. We agree.

We therefore reverse the order of the lower court and direct the entry of a support order in favor of appellant against appellee in the amount of $75 per week from January 9, 1976.[5]

5. The docket entry shows that the complaint was filed on January 9, 1976. Although we are confident that the complaint was filed earli-

SPAETH, J., files a concurring and dissenting opinion in which JACOBS, President Judge, joins.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring and dissenting:

I agree with the majority that the order of the lower court dismissing appellant's complaint must be reversed. However, I should remand for further hearing.

Over two and a half years have passed since the lower court made its finding that "[o]rdinarily the evidence would warrant entry of a support order in the amount of $75.00 per week . . . ." Since that finding, appellant's circumstances may have changed, either because of inflation or for other reasons. She should therefore have an opportunity to show that such an order would not be enough. This is especially true in light of the fact that appellant has not been able to challenge the lower court's finding that $75.00 would be enough because the lower court dismissed her complaint and no support at all was ordered. For this court to order appellee to pay appellant support at the rate of $75.00 per week for the entire period since the lower court dismissed appellant's complaint may do appellant, and for that matter, appellee, an injustice.

JACOBS, President Judge, joins in this opinion.

er, the record reveals no conclusive earlier date from which to order support payments.