568 A.2d 627

**Carol H. KING**

v.

**Robert E. KING, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 19, 1989.

Filed Dec. 26, 1989.

Bethania S. Wright, West Chester, for appellant.

Dennis D. Brogan, Asst. Public Defender, West Chester, for appellee.

Before CIRILLO, President Judge, and BECK and TAMILIA, JJ.

BECK, Judge:

This is an appeal from a final order directing husband appellant to pay spousal and child support. Husband raised the following issues in his exceptions to the master's report and now raises the same issues on appeal:

1. Whether it was error to conclude that plaintiff [wife] was entitled to support for herself because her conduct was such as to deprive her to entitlement?

2. Whether it was error to fail to attribute unused earning capacity to plaintiff, where she is a registered nurse and refuses to even consider jobs where she could earn more money?

3. Whether it was error to find that the net income of defendant [husband] was Five Thousand Seven Hundred Seventy–Three ($5,773.00) Dollars per month, where the amount is contrary to fact?

4. Whether it was error to attribute the retained cash in defendant's partnership to him as income?

5. Whether it was error to award support in an amount in excess of the reasonable needs of the recipients thereof?

6. Whether it was error to award support in an amount which exceeds defendant's take-home earnings?

7. Whether it was error to award support in the amount of Two Thousand Nine Hundred Sixty ($2,960.00)

Dollars per month, because that amount is confiscatory?

8. Whether it was error to award spousal support in an amount exceeding one-third of defendant's income?[1]

The trial court found no merit in any of these contentions and dismissed husband's exceptions.

Our standard of review is narrow. We may reverse only if we find that the trial court committed an abuse of discretion in awarding spousal support. *Morley v. Morley,* 283 Pa.Super. 397, 424 A.2d 524 (1981). We find no such abuse of discretion here. The trial court, per Judge Michael Joseph Melody, authored a comprehensive and well-supported opinion that more than adequately addresses and resolves the issues presented. Thus, relying heavily on the reasoning of the trial court, we affirm.

■ As to issue number one, the trial court appropriately determined that wife's conduct does not bar husband's obligation to pay spousal support. The court correctly stated the applicable legal standards as follows:

"It is well settled that the obligation of support continues until it is shown that the conduct of the dependent spouse provides a ground for divorce. *Morley v. Morley,* 283 Pa.Super. 297 [397], 424 A.2d 524 (1981); *Hellman v. Hellman,* 246 Pa.Super. 536, 371 A.2d 964 (1977). Moreover, the conduct claimed to nullify the obligation must be proven with clear and convincing evidence. *Commonwealth v. Turner,* 258 Pa.Super. 388, 392 A.2d 848 (1978); *Commonwealth ex rel. Roviello v. Roviello,* 229 Pa.Super. 428, 323 A.2d 766 (1974); *Commonwealth ex rel. McCuff v. McCuff* 196 Pa.Super. 320, 322, 175 A.2d 124, 125 (1961) ('Proof of guilt must be clear and satisfac-

**1.** In dissent, Judge Tamilia addresses an additional issue, namely whether the trial court erred in approving the master's inclusion of husband's monthly pension contribution in husband's gross income available for support. As the list of issues set forth in text above reveals, this issue was not raised by husband either in his exceptions to the master's report or in the statement of questions section of his brief to this court. Nor is this issue argued in the body of husband's brief on appeal. Thus, the issue is clearly waived and we express no opinion on it. Pa.R.C.P. 1910.12; Pa.R.App.P. 2116(a).

tory')" *Roach v. Roach,* 337 Pa.Super. 437 [440], 442–44, 487 A.2d 27, 28 (1985).

Husband/Father does not specify ... what fault ground for divorce he believes Wife/Mother's conduct should be subsumed under. It appears from the nature of the testimony that only 23 P.S. 201(a)(6) would arguably have any application to these facts. This provision provides for divorce when the offending spouse shall have "(6) Offered such indignities to the innocent and injured spouse as to render his or her condition intolerable and life burdensome." But where indignities are the asserted ground for divorce the spouse who asserts that he or she is innocent and injured must not have provoked the alleged indignities unless the other spouse's retaliation is excessive. *Beaver v. Beaver,* 313 Pa.Super. 512, 460 A.2d 305 (1983). . . .

Trial Court Opinion at 24–5.

Analyzing the evidence before it, the trial court then found that the parties had engaged in mutually provocative behavior and that husband had not shown grounds for a fault divorce that would relieve his obligation of support. We agree. The trial court committed no error in analyzing the pertinent law and applying it to the facts, nor has husband in any way supplemented his argument on this issue on appeal.

 As to the second issue, concerning the court's failure to attribute unused earning capacity to wife, we also agree with the trial court's conclusions. As the court stated, although a spouse should seek employment commensurate with his/her earning potential, a spouse equally may limit his/her working hours in order to care for his/her children. Trial Court Opinion at 26, citing *Newcomer v. Newcomer,* 325 Pa.Super. 536, 473 A.2d 197 (1984); *Sutliff v. Sutliff,* 339 Pa.Super. 523, 489 A.2d 764 (1985), *aff'd and remanded on other grounds,* 515 Pa. 393, 528 A.2d 1318 (1987). Here, wife testified that she worked a limited schedule and for a lower rate of pay than she otherwise would because doing so enabled her to have the time and

flexibility of schedule she needed to care for her children. We find no error in the court's conclusion that no additional income should be attributed to wife.

Next, husband challenges the court's finding that husband's net income was $5,773.00 per month. As to this contention, the trial court reviewed the testimony presented to the master and concluded that there was adequate support in the record for the master's factual conclusions. We agree and find no ground for reversal of this factual determination.

■ Fourth, husband alleges that it was error for the court to have allowed retained earnings of the partnership of which husband is a partner to be attributed to husband as income. The trial court concluded that the testimony as to why the partnership was retaining this income was too vague to support husband's claim that retaining this money was necessary to the partnership. We agree. To allow husband to shield substantial income of his business from consideration in determining his support obligation without more evidence as to a legitimate need to do so would allow spouses with support obligations to evade their obligations by unilaterally reducing their income. This is obviously impermissible under Pennsylvania law. *See Commonwealth ex rel. Loring v. Loring*, 339 Pa.Super. 92, 488 A.2d 324, 326 (1985).

■ In husband's next argument, he alleges that wife and her children were awarded support in excess of their reasonable needs. Husband bases this argument exclusively on the fact that wife requested less support than she was awarded. We find the award of support to be well within the trial court's discretion. The trial court more than adequately explained its determination of the appropriate level of support as follows:

> The amount of support awarded does not exceed the reasonable needs of the wife and the children. In reaching this conclusion we have followed and been guided by our Appellate Courts through their opinions in *Melzer v.*

*Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984); *Ryan v. DeLong*, 371 Pa.Super. 248, 538 A.2d 1 (1987); *Shutter v. Reilly*, 372 Pa.Super. 251, 539 A.2d 424 (1988).

. . . .

The formula of *Melzer* is not intended for strict mechanical application. "In interpreting *Melzer*, the Superior Court has adhered to a middle course. We have recognized the validity of the *Melzer* formula but at the same time we have remained aware of the majorities' [sic] admonition that the formula should not be inflexibly applied. Therefore, we have required trial courts to calculate the *Melzer* formula but we have allowed them to adjust the resulting support obligation if deviation from the formula is warranted under the particular circumstances. *Riess v. DeLuca*, 353 Pa.Super. 622, 625, 510 A.2d 1239, 1241 (1986); *Reitmeyer v. Reitmeyer*, 355 Pa.Super. 318, 324, 513 A.2d 448, 452 (1986)." *DeWalt v. DeWalt*, 365 Pa.Super. 280, 529 A.2d 508, 511 (1987).

. . . .

In the case sub judice, our Hearing Officer used the Chester County Guidelines. We have reviewed his use of said guidelines. In light of *Ryan* and *Shutter*, we have determined that the Hearing Officer's figures are proper and we conclude that the Hearing Officer has properly and flexibly applied the *county guidelines* consistent with *Melzer* and *Ryan*.

Trial Court Opinion at 30–1.

Our review of the record leads us to the same conclusion. It is not the function of this court to substitute its judgment for that of the trial court. We review for abuse of discretion. *Morley, supra.* Here, the trial court did no more than exercise the flexible approach to the *Melzer* formula that the decisions of this court have instructed it to employ. In doing so, the court arrived at a just result that provides for the reasonable needs of the wife and children, although higher than what wife estimated these to be, while leaving

husband with a more than reasonable amount for his own support. For this court to adjust the trial court's support calculation in this case would be a usurpation of the trial court's function.

Husband's last three allegations are equally without merit. We need say no more than did the trial court:

[Issue 6:]

Neither *Melzer v. Witsberger, supra* nor the Chester County Guidelines are concerned with "takehome earnings...." Where, as here, the court is concerned with income from a partnership in which Husband/Father is a one-third partner, the determination of the amount of Husband/Father's "take-home earnings" is too much within Husband–Father's control to be relied upon by the court.

. . . .

[Issue 7:]

"An order of support must be fair and not confiscatory and must allow for the reasonable living expenses of the payor. *Costello v. LeNoir, supra,* 462 Pa. [36] at 40, 337 A.2d [866] at 868 [ (1975) ]; *Dunbar v. Dunbar, supra,* 291 Pa.Super. [224] at 230, 435 A.2d [879] at 882 [1981]; *Ford v. Fitzgerald,* 282 Pa.Super. 25, 26, 422 A.2d 657, 658 (1980)." *Commonwealth v. Vogelsong,* 311 Pa.Super. 507, 457 A.2d 1297, 1300 (1983).

. . . .

The amount awarded in this case for Wife and children is $2960.00 per month. The net income of Husband/Father is $5773.00 per month. Thus, there is $2,813.00 per month remaining for Husband/Father's expenses after the support payments have been made. According to the budget information supplied [by husband], the personal monthly expenses come to $1,175.46 per month. Thus, the support order provides him with $1,637.00 per month over his average monthly expenses. Such an order is not confiscatory.

. . . .

[Issue 8:]

[Husband's] net income was found by the Hearing Officer to be $5,773.00. The Hearing Officer awarded Wife $1,025.00 as spousal support, or approximately 18% of his net monthly income. This amount is substantially under one-third.[2]

Trial Court Opinion at 32–4.

The order of the trial court is affirmed.

TAMILIA, J., concurs and dissents.

TAMILIA, Judge, concurring and dissenting.

Appellant husband appeals an Order entered May 31, 1988 which approved and affirmed recommendations of a hearing officer and dismissed his exceptions to a proposed Order of support. The support Order directs him to pay support in the amount of $1,025 per month for support of appellee spouse and $1,935 per month for support of the parties' four minor children. While the majority affirms the trial court on all aspects of the appeal, I would modify the support award and disallow as income the $373 appellant contributes to a pension plan. I also believe the trial court accorded too much emphasis to the "meager" amount wife said was necessary to support her children, and erred in ordering support payments for her in an amount over twice what she testified her needs to be.

In its Opinion, the trial court explains the factual and procedural history surrounding the appeal:

On July 10, 1987, Wife/Mother filed a "Complaint for Support" with the Domestic Relations Section of this Court. On September 8, 1987, a hearing was held on the

---

**2.** Husband's argument that the amount of support is more than one-third of his net income is based on his view that the net income figure found by the Hearing Officer was too high. Thus, husband argues, if that figure is adjusted downward, *then* the support award is one-third of the adjusted income figure. Since we have found that the Hearing Officer's net income figure was supported by the evidence, the support award is only 18% of husband's net income, as correctly found by the Hearing Officer.

complaint before Hearing Officer Klein. The Hearing Officer determined the net monthly income of Wife/Mother to be $790.00 and the net monthly income of Husband/Father to be $5773.00. The hearing Officer then determined that Wife/Mother was entitled to support in the sum of $1025.00 per month and directed Husband/Father to pay $1935.00 per month for support of the four children.

The Hearing Officer's recommendation was to be effective on July 10, 1987. Husband/Father filed exceptions and both parties filed briefs. Oral argument was heard on the exceptions.

Slip Op., Melody, J., 6/1/88, p. 1. The Order in question was entered and husband timely filed the appeal.

As noted in the majority Opinion, husband contends the court erred in eight respects: 1) concluding wife was entitled to support for herself because her conduct was such as to deprive her entitlement; 2) failing to attribute "unused" earning capacity to wife because she is a registered nurse and refuses to consider jobs where she could earn more money; 3) finding the net income of husband was $5,773 per month where that is not the true amount of his income; 4) attributing one-third of the retained cash of husband's three person physical therapy partnership to him as income; 5) awarding support in excess of the reasonable needs of the wife and children; 6) awarding support in excess of husband's take-home earnings; 7) awarding a confiscatory amount ($2,960) of support; and 8) awarding spousal support in excess of one-third of his income.

The appellate scope of review of an Order regarding a petition for support is narrow; we may not substitute our judgment for that of the trial court, and we are limited to a determination of whether the trial court committed an abuse of discretion in awarding spousal support. *See Morley v. Morley*, 283 Pa.Super. 397, 424 A.2d 524 (1981); *Commonwealth ex rel. McQuiddy v. McQuiddy*, 238 Pa.Super. 390, 358 A.2d 102 (1976).

With this in mind, I first address wife's entitlement to spousal support. "Support, child or spousal, assures a reasonable living allowance to the party requiring support." *Laughlin v. Laughlin,* 372 Pa.Super. 24, 28, 538 A.2d 927, 929 (1988). The obligation to support the dependent spouse continues until it is shown that the conduct of the dependent spouse provides a ground for divorce; the conduct claimed to nullify the obligation must be proven by clear and convincing evidence. *Roach v. Roach,* 337 Pa.Super. 440, 487 A.2d 27 (1985).

I agree with the trial court's assessment of the matter. Husband did not allege any specific conduct of wife which would constitute a ground for a fault divorce under 23 P.S. § 201(a), and the only subsection which is arguably applicable is 201(a)(6). That subsection provides to the injured and innocent spouse a ground for divorce whenever it shall be judged that the other spouse shall have offered such indignities to the innocent and injured spouse as to render his or her condition intolerable and life burdensome. The trial court found here that husband had not shown grounds which would be sufficient to grant a fault divorce. In *Beaver v. Beaver,* 313 Pa.Super. 512, 460 A.2d 305 (1983), we said the moving party must prove indignities as well as that he or she is the injured and innocent spouse. We explained:

> [I]ndignities may consist of vulgarities, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, or malignant ridicule. Obviously, several of the factors listed above must coalesce to justify a finding of indignities, although taken separately, no single incident or factor would be sufficient.

*Id.,* 313 Pa.Superior Ct. at 516, 460 A.2d at 307 (citations omitted). Moreover, the spouse claiming to be innocent and injured must not provoke the other's indignities, unless the other spouse's retaliation is excessive. *Id.* After a thorough review of the record and testimony before us, I see no

error in the court's finding that husband had failed to sustain his burden of proof.

As to husband's second contention, I agree with the trial court and am not persuaded by appellant's argument that net income of $19 per hour should have been imputed to wife because she refuses to seek employment as a registered nurse at that rate of pay. Wife testified she works 20 hours per week at a rate of $8 per hour as an office nurse plus an additional 5 hours per week at a rate of $10.75 teaching a class in childbirth (N.T. 9/8/87, pp. 80–81, 85). She further testified that while she was aware she could earn $18 to $20 per hour as an OB/GYN nurse, she had not looked into hospital nursing because the hours would interfere with her care of the children, whereas her current job permits her to be present for the children in the morning when they leave for school and allows her flexibility in her schedule to accommodate the children's activities (N.T. at 83, 85). In view of *Sutliff v. Sutliff,* 339 Pa.Super. 523, 489 A.2d 764 (1985), I see no error on the part of the trial court in concluding wife is entitled to support payments by husband because her working hours are limited for legitimate reasons related to the care of her children.

Next, husband urges the court should have found $2,673.35 per month to be his income, and he argues the court erred in attributing to him net monthly income of $5,773. The trial court made its calculation in the following manner:

> The Husband/Father's accountant testified without contradiction that his net monthly income for 1987 would be $5400.00 per month. (N.T. 23). He also testified that there was a $5,730 contribution to a retirement plan being made for the year. The Hearing Officer divided by twelve (12) months the $5,730.00 to arrive at the figure of $477.50 per month for the retirement plan. He then subtracted $104.50 to allow for taxes. The resulting net monthly figure for this retirement plan was $373.00. The Hearing Officer added this $373.00 per month to the

$5,400.00 per month to arrive at a total net figure of $5,773.00 per month.

Slip Op. at 5.

Appellant argues the court improperly used a net income figure of $5,400 (plus the retirement contribution) because it is not the amount he will receive since the partnership is retaining income for expansion, but it is the figure upon which his taxes are calculated. Instead, he contends the court should have used as his income a $1,000 weekly draw from the three-way partnership, less $440 withheld for taxes, resulting in a total net income of $560 per week. Moreover, husband says a 44 per cent tax would be imposed on his weekly tax-deferred retirement if the money were to actually be received, so that the court should have attributed a retirement figure of $61.71 per week after taxes to him.[1] He calculates this by allocating the $5,730 over 52 weeks, for a total of $110.19 per week, less 44 per cent, $48.48 in taxes, resulting in an additional $61.71. He urges this figure, added to his weekly draw of $560 per week, should have led the court to conclude he receives $621.71 per week or $2,673.35 per month, in income.

While the accountant who serves the partnership and the parties testified on direct examination that husband receives a $1,000 weekly draw, of which he must set aside $440 for tax purposes (N.T. at 6, 9–10), he also testified on cross-examination that husband's projected net income for 1987 would be $65,000, or $5,400 per month. On redirect, the accountant attempted to explain that appellant would not be receiving $5,400 per month from the business because "[t]here are debt obligations which the partnership must pay, which they incurred at the inception of the partnership, and they are not deductible for tax purposes. Plus there is also the reserve of funds necessary for the construction of the new physical plant." (N.T. at 26–7.)

---

**1.** He apparently derives this 44 per cent tax figure from his accountant's testimony that husband must reserve $440 out of every $1,000 for tax purposes.

My careful review of the record and exhibits which include exhibit P1, the statement by appellant's personal and the partnership's C.P.A., convinces me the trial judge was correct in finding appellant failed to prove the monthly net income of $5,400 was substantially reduced by payment into a reserve fund, payment on partnership debts and taxes. Those accounts establish that the net income of the partnership through the first seven months of 1986 was $122,710, whereas for 1987 it was $239,090. Total partnership withdrawals for the first seven months of 1987 were $120,538 or projected for the full year, $68,880 per partner. At the same time working capital, after the draw, increased by $109,000 for an end balance of $155,000 for the seven month period. During the same period, funds applied to acquire fixed assets and to reduce long term debt amounted to $9,453 for seven months, or as projected to twelve months would amount to $16,205. The accountant testified Mr. King's anticipated gross income in 1987 was $89,190 (H.T. 9/8/87, p. 22–23), resulting in net income after taxes and social security of $65,000. This is the figure from which the court derived the husband's net income available for support consideration. I find no error by the trial court in finding the net income of the appellant to be in excess of $5,400 per month. As discussed infra however, I would disallow the $373 per month added which was a reasonable payment to a pension plan.

Appellee/mother, in her budget submission, documented a total need for herself and the four children of $2,310 per month, which was uncontested by the husband. The court, applying the *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984), guidelines and referring to the Chester County guidelines, made an award of $1,025 for the spouse and $1,935 for the children for a total award of $2,960. The trial court used as a basis for its computation of the husband's ability to pay a monthly net income of $5,773 per month, which included $5,730 for the year ($477.50 per month) contributed to the husband's pension plan less taxes. I believe the trial judge erred in disallowing this amount as

a necessary deduction from gross income. A reasonable pension plan, beyond social security contributions, would appear to be a prudent and desirable expenditure in today's world. Such an investment is to be considered deferred compensation if paid by an employer and is subject to some form of distribution as *marital property* at the time of divorce. There is no reason that this fund should not be treated in a similar manner. Thus $373 ($477.50, contribution per month less $104.50 in taxes) should be subtracted from the $5,773 monthly net to bring us to a net income of $5,400 per month. Since the pension plan is not excessive and it cannot be imputed to the husband that he has sequestered an inordinate amount of money for that purpose, to reduce the amount available for support it should be allowed. In a rapidly changing economic environment in which less reliance can be had on government programs for retirement, and the present thrust is toward encouraging individual efforts to provide for security upon retirement, this cannot be ignored.[2]

Also, I find the trial court sua sponte attributed too much weight in holding the wife's expenses to be "meager" when this apparent effect was due to a majority of the household expenses being attributable to the four children.[3] While this is a formula consideration, it serves to minimize the amount the wife needs to expend out of her own funds for housing, utilities and other amenities for the same quantity and quality of these necessities which would be a much higher ratio if there were fewer children. Thus I believe the apportionment must be adjusted to fit these two considerations.

**2.** The majority does not discuss this matter, relying on the master's factual conclusions.

**3.** Wife testified the household food expense is only $100 per month because she cares for a large garden and cans and freezes most of the vegetables and fruit used by the family throughout the year (N.T. at 77). When the trial court derives a legal conclusion based on an improper factual determination, as established by the record, an appellate court may correct such a finding. The majority ignores this fundamental principle of appellate review and its reliance on the trial court's incorrect assumptions defeats the purpose of review and works an injustice on the party seeking relief.

Applying these considerations to the *Melzer* formula, I derive the following:

Amount available for support from mother, whose needs are set at $460

| | |
|---|---:|
| Net monthly income | $790 |
| Needs of mother | − 460 |
| Available for support | $330 |

Amount available for support from the father whose needs are set at $1,175.46

| | |
|---|---:|
| Net monthly income | $5,400.00 |
| Needs of father | − 1,175.46 |
| Available for support | $4,224.54 |

The *Melzer* calculation,[4] to determine appellant's total support obligation, therefore, produces the following:

$$\frac{F.A.I.}{M.A.I. + F.A.I.} \quad \frac{\$4,224.54}{\$330 + \$4,224.54} \times 1,850 \text{ (childrens' needs)} = \$1,715.95.$$

This figure is only a $4.55 deviation from that calculated by the trial court using the *Melzer* formula (Slip Op. at 8), although it is $219 per month less than the award by the hearing officer and ultimately the trial court.

The *Melzer* calculation,[5] to determine mother's support obligation, is as follows:

$$\frac{M.A.I.}{M.A.I. + F.A.I.} \quad \frac{\$330}{\$330 + \$4,224.54} \times 1,850 \text{ (childrens' needs)} = \$134.12.$$

I do not find justification for the award of the wife of $1,025 per month. She set her own need at $460 per month which is admittedly low, but as explained above, is absorbed

**4.** Father's available income = F.A.I.
 Mother's available income = M.A.I.

**5.** *Ibid.*

in part by the sharing of the home and expenses for the children, largely paid by the husband.

Looking to the standard applied to support for a spouse and applying the one-third rule to the $2,508.59 which would be left to husband after paying his share for child support, a reasonable and probably maximum amount payable for spousal support would be $836. Adding $836 to the $195.88 remaining after appellee's contribution of $134.12 to child support, the total amount of the mother's spousal share would be $1,031.88. This would leave appellant with $1,672.59. Such an arrangement would not be confiscatory.

In view of the fact that I believe virtually all of the findings and assumptions by the trial judge are correct, except as I would modify following my review of the record, I would affirm the Order except as noted above, with the wife to receive spousal support in the amount of $836 and the children to receive child support in the amount of $1,715.95 per month, for a total support Order of $2,551.95 per month. While it is customary to remand for reconsideration by the trial court when the Order entered is not affirmed, where as here the change is based on figures documented on the record and requires only a substitution of those figures for those used by the court, judicial efficiency and economy suggest that I would enter the Order as I believe it should be modified.