J-A26034-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.E.E. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| M.P.E. | |
| Appellant | No. 2051 MDA 2013 |

Appeal from the Order Entered October 11, 2013
In the Court of Common Pleas of York County
Domestic Relations at No(s): 00386-SA-2013

--------------------------------------------------------------------------------

| | |
|---|---|
| J.E.E. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| M.P.E. | |
| Appellant | No. 137 MDA 2014 |

Appeal from the Order Entered December 20, 2013
In the Court of Common Pleas of York County
Domestic Relations at No(s): 00386-SA-2013

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED JUNE 16, 2015**

In these consolidated appeals, M.P.E. ("Husband") challenges the amount of child support that the trial court ordered him to pay J.E.E. ("Wife").  The most intricate issue is whether income that Husband earned in 2011, his highest earnings year, is available for support calculations.

Husband argues that his business was unusually profitable in 2011, and that he cannot achieve this level of earnings consistently. He also insists that his 2011 earnings were offset by construction costs for a new building to house his business. The trial court rejected Husband's claims and included his 2011 earnings within its support calculations. Based on our review of the record and relevant decisions, we conclude that the trial court appropriately exercised its discretion. For this reason and other reasons provided below, we affirm.

Husband and Wife married in 1992 and have two children aged 12 and 8. In 2011, Husband and Wife separated, and in 2012, Wife filed for divorce. In early 2013, Wife filed a complaint for support and a petition for alimony pendente lite against Husband. On September 19, 2013, the trial court held a special hearing on both of Wife's actions.[1] In a memorandum

---

[1] The certified record does not include the transcript from the one-day hearing on September 19, 2013. As the appellant, Husband has the duty to ensure that the record includes all transcripts necessary for appellate review. Pa.R.A.P. 1911. If the appellant fails to carry out this duty, this Court "may take such action as it deems appropriate, which may include dismissal of the appeal." Pa.R.A.P. 1911(d).

We conclude that dismissal of this appeal is not appropriate. Husband included the transcript in his reproduced record, and the transcript appears complete. Wife does not object to the transcript's absence from the certified record or complain that the transcript in the reproduced record is incomplete. Therefore, we will augment the certified record on our own initiative to include the transcript of the September 19, 2013 hearing. Pa.R.A.P. 1926(b)(1) (appellate court may, on its own initiative, correct an omission from the record at any time).

and order docketed on October 11, 2013, the trial court directed the hearing officer to calculate a new support obligation based on analysis of the parties' 2010, 2011 and 2012 individual tax and Husband's S Corporation tax returns. On November 12, 2013, Husband filed a notice of appeal of the October 11, 2013 order. This Court docketed Husband's appeal at 2051 MDA 2013.[2]

In an order docketed on December 20, 2013, the trial court determined that Husband's monthly net income was $9,008.67 and Wife's monthly net income was $3,001.78, resulting in a combined monthly net income of $12,010.45. The trial court directed Husband to make monthly payments of $2,073.90 in child support, $1,179.90 in alimony *pendente lite* and $296.20 in arrears.[3, 4]

---

[2] On November 18, 2013, the trial court directed Husband to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal. On December 9, 2013, Husband filed a timely Pa.R.A.P. 1925(b) statement. On January 17, 2014, the trial court issued a Pa.R.A.P. 1925(a) opinion.

[3] None of the issues on appeal involve the amount of alimony pendente lite or arrears.

[4] The trial court stated that Husband's 2011 income (his best earnings year) must be included in the calculation of Husband's monthly net income and his monthly child support payment. Other than its decision about Husband's 2011 income, the trial court did not describe its methodology in determining Husband's and Wife's monthly net income or Husband's monthly child support payment. We do not consider this lack of further explanation to be significant, because Husband's 2011 income is the only methodology-related issue that Husband preserved for appeal.

In a second order docketed on December 20, 2013, the trial court set Husband's arrears at "$17,710.84 as of today." On January 21, 2014, Husband filed a notice of appeal from "the December 20, 2013 order."[5] This Court docketed Husband's second appeal at 137 MDA 2014. On February 19, 2014, this Court consolidated Husband's two appeals *sua sponte*.[6]

Our standard of review over support orders is for abuse of discretion:

> [T]his Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*W.A.M. v. S.P.C.*, 95 A.3d 349, 352 (Pa.Super.2014). "[T]he assessment of the credibility of witnesses is within the sole province of the trial court." *Calabrese v. Calabrese*, 682 A.2d 393, 395 (Pa.Super.1996), *rejected on*

---

[5] Husband's notice of appeal does not specify which order docketed on December 20, 2013 is the subject of his appeal. This ambiguity does not affect our jurisdiction over this appeal, because "a timely notice of appeal triggers the jurisdiction of the appellate court, notwithstanding whether the notice of appeal is otherwise defective." *Commonwealth v. Williams*, 106 A.3d 583, 587 (Pa.Super.2014). Moreover, review of Husband's Pa.R.A.P. 1925 statement indicates that his appeal pertains to the child support component of the first order docketed on December 20, 2013.

[6] The trial court did not issue a second Pa.R.A.P. 1925(a) opinion.

*other grounds by* **Mascaro v. Mascaro**, 803 A.2d 1186, 1194 (Pa.2002). In addition, the fact-finder is entitled to weigh the evidence presented and assess its credibility. **Calabrese**, **supra**.

Guided by these standards, we turn to the evidence adduced during the evidentiary hearing on Wife's child support petition. Husband is the sole owner of Eden Tool Company ("Eden Tool") and the sole shareholder in Eden Properties, LLC ("Eden Properties"). N.T., 9/19/13, p. 4. Wife is a guarantor on loans and lines of credit of Eden Tool, and the marital residence is collateral for these loans and credit lines. **Id.**, p. 15.

Prior to the parties' separation, Eden Properties had begun construction of a new building for Eden Tool and had obtained financing from the bank for construction purposes. **Id.**, pp. 13-14. Husband wanted to construct a new building due to Eden Tool's increase in business. **Id.**, pp. 6, 12, 67. Both parties guaranteed the loan underlying the construction mortgage, and the marital residence served as collateral for the loan. **Id.**, pp. 15-16. Wife's enthusiasm for Husband's business dimmed when she discovered that Husband was having an extramarital affair. **Id**., p. 70.

The parties disputed whether Husband's 2011 business income should be considered in the calculation of support. Eden Tools' 2011 income was greater than any other surrounding years. Husband claims that the higher 2011 income was somewhat of an anomaly: he convinced his 5 employees to put in a lot of overtime in 2011 to make the business grow, but they could

not do that amount of work every year. *Id.*, pp. 92-93. Husband also claimed that the size of his 2011 income was due in part to accounting; his accountant maximized the figures so that he could convince the bank to provide financing for the new building. *Id.*, p. 91. He also claimed that he cannot make 2011-level income again because Eden Tools lost a major customer. *Id.*, pp. 6, 93-94. Husband also claimed it would be unfair to include 2011 income in the support calculations, because any increase in his income was offset by construction expenses for the new facility, which remains unfinished. *Id.*, p. 6.

Husband insisted that Wife verbally agreed to accept rental income from Eden Tool in lieu of support. Wife claims she never made such an agreement but only agreed to discuss this arrangement with her attorney. *Id.*, pp. 27-28. Wife testified that she declined Husband's proposal after discussing it with counsel. *Id.* There was no written agreement to substitute rental income for support. *Id.*

The trial court ruled that Wife never accepted Husband's proposal to substitute rental income for support. The court credited Wife's assertion that she discussed this concept with counsel and then turned down the proposal. Trial Court Opinion, 10/11/13, p. 3.

The trial court also ruled that Husband's 2011 income should be considered for support purposes. Citing *Lehman v. Lehman*, 636 A.2d 1172 (Pa.Super.1994), the court held that Husband's decision to invest

funds in a new facility for Eden Tools did not render these funds unavailable for support purposes. Trial Court Opinion, 10/11/13, pp. 3-4. Applying **Lehman**, the court determined the income was available for support regardless of whether Husband made the investment decision prior to or after separation or whether both parties were signatories to a loan or promissory note.

Husband raises three issues on appeal:

> THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO CONSIDER AND APPLY THE DOCTRINE OF PROMISSORY ESTOPPEL TO THE FACTS AS ADDUCED BY THE PARTIES' TESTIMONY.
>
> THE TRIAL COURT ABUSED ITS DISCRETION WHEN DETERMINING HUSBAND'S INCOME FOR SUPPORT BY FAILING TO CALCULATE HUSBAND'S DISPOSABLE INCOME ON A NET CASH FLOW BASIS, AND BY NOT REDUCING FROM HUSBAND'S INCOME FROM HIS CORPORATION, ALL AMOUNTS BORROWED, OR PAID FROM ONGOING OPERATIONS FOR CAPITAL EXPENDITURES WHICH WERE NECESSARY FOR THE CONTINUED OPERATIONS AND SMOOTH RUNNING OF THE BUSINESS.
>
> THE TRIAL COURT ABUSED ITS DISCRETION IN ATTRIBUTING ANY RENTAL REAL ESTATE INCOME TO HUSBAND AS INCOME AVAILABLE FOR SUPPORT, WHEN THE UNREFUTED TESTIMONY OF RECORD WAS THAT FOR THE ONE RENTAL PROPERTY THAT PRODUCED A POSITIVE CASH FLOW, ALL RENT AFTER SEPARATION WAS PAID NOT TO HUSBAND, BUT RATHER TO WIFE.

Brief For Appellant, pp. 13, 16, 18.

Husband first argues that Wife is not entitled to support under the doctrine of promissory estoppel, because she agreed to accept rental income

instead of child support, and Husband relied on this promise to his detriment. To prove promissory estoppel, Husband must demonstrate: (1) the promisor (Wife) made a promise that she should have reasonably expected would induce action or forbearance on the part of the promisee (Husband); (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise. *Crouse v. Cyclops Industries*, 745 A.2d 606, 611 (Pa.2000). Husband's argument runs aground because the trial court found as fact that Wife did not agree to accept rental income in lieu of support. While she considered Husband's proposal to substitute rental income for support, she ultimately turned it down. Because we defer to the trial court's findings of fact that are supported by the record, *Calabrese*, *supra*, 682 A.2d at 395, Husband cannot prove element (1) of promissory estoppel, a promise by the promisor. Thus, Husband cannot obtain relief under the doctrine of promissory estoppel.

Husband's second argument is that the trial court erred by including Husband's 2011 income in its support calculations, because Husband cannot repeat 2011's unusually large profits, and 2011 earnings were substantially reduced by construction expenses on a new building for Husband's company.

A short sketch of the rules governing child support is helpful. "Generally, the amount of support to be awarded is based upon the parties' monthly net income." Pa.R.Civ.P. 1910.16-2. The court determines each

spouse's "monthly net income" by subtracting permissible items from each spouse's "monthly gross income".  Pa.R.Civ.P. 1910.16-2(c)-(d).  Then, when the parties' combined monthly net income is less than $30,000, as it is here, the court should:

(1)    calculate the amounts spent on children in intact families using the schedule in Pa.R.Civ.P.  1910.16-3;

(2)    calculate the obligor's (Husband's) share of the basic support obligation using the formula in Part I of Pa.R.Civ.P. 1910.16-4;

(3)    allocate additional expenses between the parties under Pa.R.Civ.P. 1910.16-6;[7] and

(4)    in the court's discretion, make deviations from the amount of support based on factors outlined in Pa.R.Civ.P. 1910.16-5, including but not limited to "unusual needs and unusual fixed obligations" and "other relevant and appropriate factors."

Husband argues that the trial court performed the calculations in steps (1) and (2) incorrectly by including Husband's 2011 income in its calculations.  Husband contends, in so many words, that Husband's 2011 income is not capable of repetition and does not reflect his true earning capacity.  Based on our careful analysis of **Labar v. Labar**, 731 A.2d 1252

_____

[7] None of these additional expenses have any relevance to the present appeal.

(Pa.1999), and several decisions from this Court,[8] we conclude that the trial court's decision was an appropriate exercise of its discretion.

In *Labar*, the husband owned a bowling alley and had to make significant capital expenditures to convert an antiquated manual scoring system into a modern, computerized scoring system, including pinsetters. The husband argued that the court should deduct these expenses from his income in its calculation of support, because these expenses were "necessary for the continued operation and smooth running of the business." *Id*., 731 A.2d at 1257.

The Supreme Court agreed with the husband. The Court instructed that when the trial court determines the financial responsibilities of parties to a dissolving marriage, the trial court must look to the actual disposable income of the parties. *Id*. at 1255. Such "income must reflect actual available financial resources and not the oft-time fictional financial picture" created by the application of federal tax laws. *Id.* The owner of a closely held corporation cannot avoid his support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures and/or corporate distribution amounts. *Id*. In situations where the individual with the support obligation is able to control the retention or disbursement of funds by the corporation, he still will bear

---

[8] *See Kraisinger v. Kraisinger*, 928 A.3d 333 (Pa.Super.2007); *McAuliffe v. McAuliffe*, 613 A.2d 20, 23 (Pa.Super.1993); *Lehman*, *supra*.

the burden of proving that such actions were "necessary to maintain or preserve" the business. *Id*. On the other hand, if the individual can demonstrate that an expense is "necessary for the continued operation and smooth running of the business," the court should deduct this expense from gross income to arrive at net income for support purposes. *Id*. The husband's installation of a computerized scoring system in the bowling alley was deductible from gross income, since it was necessary to the continued operation of the bowling alley. Without this improvement, the business could not have remained competitive with other bowling alleys. *Id*. at 1258.

*Kraisinger* provides another example of a necessary business expense that is deductible from gross income for purposes of support calculations. The wife in *Kraisinger* argued that the husband underestimated his income for support purposes by wrongfully claiming real estate depreciation. The husband responded that his depreciation deductions "were properly not considered income as they were capital expenditures used in the expansion of his [dental] business." *Id*., 928 A.2d at 344. Relying on *Labar*, the hearing officer concluded that it was proper to deduct depreciation expenses from the husband's income. The trial court agreed with the hearing officer and concluded that "the depreciation deductions were for actual cash outlays and the replacement of worn equipment[,] … not for the depreciation of real estate." *Id*. This Court affirmed, reasoning as follows:

> We have reviewed wife's arguments and first note that wife did not establish that the depreciation was for real estate as opposed to equipment. She did not cite to the record on this issue and we will not do her work for her. Rather, as the hearing officer noted and wife fails to establish otherwise, husband's uncontradicted testimony established that the depreciation was on equipment. … In addition, we note that the hearing officer's decision was largely based upon a credibility determination that the purchases of the items were necessary business-related expenses and were not taken to avoid distributions to husband. Wife disputes this, but we must remain cognizant that a hearing officer's credibility determination must be accorded great weight. … For these reasons, we find wife has failed to establish her entitlement to relief on this issue.

*Id*. at 344-45.

While **Labar** and **Kraisinger** permit deduction of expenses from the calculation of income that are essential to keep the business competitive, *non*-essential expenses that merely help the business grow are *not* deductible. For example, in **McAuliffe**, this Court rejected the husband's argument that his increased expenditures for business equipment (from $66,000 in 1989 to $201,000 in 1990) were deductible. We reasoned that he made these expenditures for "new reserves" and to expand the business rather than to continue its smooth operation and running. **McAuliffe**, 613 A.2d at 22. We suggested that the sudden increase in expenditures represented the husband's attempt to dodge his support obligations. **Id**. ("to allow husband to shield substantial income of his business from consideration in determining his support obligation without more evidence as

to a legitimate need to do so would allow spouses with support obligations to evade their obligations by unilaterally reducing their income. This is obviously impermissible under Pennsylvania law").

In the present case, Husband's decision to spend capital on a new building was discretionary (*McAuliffe*) instead of mandatory (*Labar* and *Kraisinger*), because the purpose of the new building was to expand Husband's business instead of preventing its demise. Proof that the decision to make these expenditures was discretionary instead of necessary arises from the fact that the building was never completed, yet the company remains in good shape today.[9] Husband did not have to build the new building in order for his business to survive.

Husband argues that he decided to construct a new building before separating from Wife; that Wife initially supported this decision and guaranteed the loan for construction expenses; and that once he and Wife separated, it was too late for him to back out, because the bank had already advanced the loan, and it had to be repaid. None of this overrides the fact

---

[9] Gross revenues for the business were $1,302,136.00 in 2011, $828,375.00 for 2012, and $500,000 for the first six months of 2013. N.T., 9/19/13, pp. 6, 61.

that construction of the new building was discretionary, rather than an act that was necessary to keep Husband's business from foundering.[10]

*Lehman*, *supra*, further confirms that Wife's pre-separation acceptance of the construction project does not entitle Husband to deduct construction expenses from his support obligations. In *Lehman*, several years before separation, the husband decided to buy two businesses, and both spouses signed promissory notes for loans to fund the purchase. Even though the wife agreed to the purchase, this Court held that the husband could not deduct loan payments from his support obligations. Just as the husband in *Lehman* could not deduct pre-separation obligations, neither can Husband do so here. *Lehman* is consistent with the principle that *Labar, Kraisinger* and *McAuliffe* illustrate in greater detail: a discretionary decision to expand one's business is not a valid excuse for reducing support obligations.[11]

_____

[10] Husband's counsel stated during oral argument that it was necessary to construct a new building because Husband had been operating the business in a garage attached to Wife's house, a violation of local zoning codes. We do not see any evidence of this point in the record (and even if there was such evidence, the trial court was free to disregard it in its role as finder of fact).

[11] Husband also tried to explain away 2011's large earnings as the product of an unusually large amount of overtime work by his employees that they cannot replicate every year. The trial court properly rejected this argument. As the sole proprietor of his business, Husband has the authority to demand the same amount of overtime each year or to find additional employees for
*(Footnote Continued Next Page)*

- 14 -

In his final argument, Husband complains that the trial court attributed rental real estate income to Husband in its support calculations even though Husband previously paid rental income directly to Wife. Husband waived this issue by failing to raise it in his Pa.R.A.P. 1925(b) statement. **Madrid v. Alpine Mountain Corp.**, 24 A.3d 380, 382 (Pa.Super.2011) (appellant's failure to include issue in Rule 1925(b) statement waives that issue for purposes of appeal).

Even if Husband preserved this issue, the trial court's decision to attribute rental real estate income was appropriate. Husband requests exclusion of rental income from the calculation of monthly gross income under Pa.R.Civ.P. 1910.16-2. Pa.R.Civ.P. 1910.16-2(a)(2) provides, however, that gross income includes "net income from business or dealings in property". Under this rule, rental income clearly is part of Husband's gross income. No other rule provides any ground for excluding rental income from support calculations.

Notably, Husband only paid rental income to Wife *before* she filed for support but not afterward. Because he has continued to receive rental income after Wife filed for support but no longer pays it directly to Wife, this income constitutes gross income under Rule 1910.16-2(a)(2).

For these reasons, we affirm the trial court's order.

*(Footnote Continued)* ───────────

overtime work, but he simply finds it inconvenient to demand a 2011 level of effort from himself or his employees.

Order affirmed.  Record modified to include transcript from evidentiary hearing on September 19, 2013.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2015